UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TERRANCE D. FOX,

                              **Plaintiff,**

   -against-                                          04-CV-1144

AMTRAK,

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I. INTRODUCTION**

    Plaintiff Terrance D. Fox ("Plaintiff") commenced this action *pro se* pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), asserting that his employer, Amtrak ("Amtrak" or "Defendant"), unlawfully discriminated against him based upon his race, and unlawfully retaliated against him because he complained of the discrimination. See generally Compl. dkt. # 1. After Defendant answered, Plaintiff retained legal counsel who currently represents him in this action. See Notice of Appearance, dkt. # 12. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56 contending that the action should be dismissed in its entirety. Plaintiff, through counsel, has opposed the motion.

1

## II. BACKGROUND

In support of the motion, Defendant has filed a properly supported "Defendant's Statement of Material Facts" as required by the Northern District of New York's Local Rule 7.1(a)(3)("Defs. L.R. 7.1 Stat."). See N.D.N.Y.L.R. 7.1(a)(3). Plaintiff has failed to file any responsive Statement of Material Facts as also required by the Local Rules. See id.[1]  The Court declines to sift through the factual materials that Plaintiff has submitted in an effort to find factual support for his arguments. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Court's Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted). Rather, the Court deems

---

[1] Specifically, the Local Rule 7.1(a)(3) require a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3). Once such a statement is submitted, the party opposing summary judgment

> shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Id. (emphasis in original).

the properly supported allegations in Defendant's L.R. 7.1 Statement admitted for purposes of this motion. See <u>N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.</u>, 426 F.3d 640, 648-49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); <u>Meaney v. CHS Acquisition Corp.</u>, 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); <u>McKnight v. Dormitory Auth. of State of N.Y.</u>, 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); <u>Osier v. Broome County</u>, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999)(McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record"). Familiarity with the contents of Defendant's L.R. 7.1 Statement is presumed, and the Court will repeat only those facts that are pertinent to the instant Decision and Order.

### III. STANDARD FOR SUMMARY JUDGMENT

The Court will apply the well-settled standard for deciding summary judgment motions in discrimination actions. See FED. R. CIV. P. 56(c); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986); <u>Weinstock v.

3

Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Bracci v. N.Y.S. Dept. of Correctional Services, 2005 WL 2437029, at * 1 (N.D.N.Y. Sept. 30, 2005)(McAvoy, S.J.). Even though the facts are uncontested, the Court construes them in the light most favorable to Plaintiff, and resolves all ambiguities and draws all reasonable factual inferences in Plaintiff's favor. Michalski v. The Home Depot, Inc., 225 F.3d 113, 115 (2d Cir. 2000).

**IV. DISCUSSION**

    **A.  Discrimination Claims**

Plaintiff is currently employed by Amtrak as an electrician at its Albany/Rensselaer facility, and has been employed in this capacity since 1982. Def. 7.1 Stat. ¶ 3. Plaintiff contends that in August 1999, Amtrak, through its general foreman, abolished his then-held position causing him to suffer a demotion. See Compl. ¶ 8(a). Plaintiff asserts that Amtrak's action in this regard was based upon considerations of his race. Id. Plaintiff further contends that in August 2003, the same general foreman again abolished his then-held position causing him to suffer another demotion. Id. at ¶ 8(b). Again, Plaintiff asserts that the abolishment of this position was based upon considerations of his race. Id. and ¶ 8(d). Plaintiff filed a charge of discrimination against Amtrak with the Equal Employment Opportunity Commission ("EEOC") on December 1, 2003, contending that the August 1999 and the August 2003 job abolishments were unlawful discriminatory acts by Defendant.

    **1. August 1999 Job Abolishment**

Plaintiff's claims of disparate treatment discrimination[2] are subject to dismissal for several

---

[2] To the extent Plaintiff attempts to raise, for the first time in his Memorandum of Law in Opposition to Summary Judgment, an *independent* hostile work environment claim separate from his claim of retaliation (discussed in the text, *infra*), that claim is not considered in this action. See Kearney v. County of Rockland, 373 F. Supp.2d 434, (S.D.N.Y. 2005)(District Court would not consider employee's hostile work environment claim under Title VII, where

(continued...)

4

reasons. First, the claim arising from the 1999 job abolishment is untimely. To state a timely claim for a violation of Title VII in New York, a complaint must be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e); Petrosino v. Bell Atlantic, 385 F.3d 210, 219 (2d Cir. 2004); Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 133 (2d Cir. 2003)(citing 42 U.S.C. § 2000e-5(e)). The 300-day period effectively acts as a statute of limitations. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998). A claim of employment discrimination accrues "on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000). Plaintiff must necessarily have learned of the abolishment of his position in August of 1999 because he soon thereafter bid into another position. Def. L.R. 7.1 Stat. ¶¶ 11-12. Thus, the facts indicate that the claim accrued in August of 1999 yet a complaint was not filed with the EEOC within 300 days of August 1999. Unless there is some reason to hold otherwise, the claim must be dismissed as untimely.

Plaintiff's argument that there existed a continuing violation spanning into the limitations period is without merit. Conduct that has been characterized as a continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 (2002)(internal quotation marks

---

²(...continued)
claim was raised for first time in employee's memorandum of law opposing employer's motion for summary judgment, and was not included in her complaint or her EEOC charge.)(citing Southwick Clothing LLC v. GFT (USA) Corp., No. 99 Civ. 10542, 2004 WL 2914093, **6-7, 2004 U.S. Dist. LEXIS 25336, at *20-21 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered...."); Rochester v. Blue Cross & Blue Shield, No. 98 Civ. 2436, 2000 WL 1052064 *6, 2000 U.S. Dist. LEXIS 10550, at *17-18 (S.D.N.Y. June 30, 2000); Beckman v. U.S. Postal Serv., 79 F. Supp.2d 394, 408 (S.D.N.Y.2000) (noting that claims not pleaded in the complaint will not be considered in opposition to summary judgment); Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D.N.Y.1997) (noting that "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment"))..

omitted); Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir. 2003). In order to assert a continuing violation, a plaintiff must establish both (1) a policy or practice which caused the alleged discrimination, and (2) that the timely claim is continuous in time with the untimely claims. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998). However, discrete discriminatory acts cannot be part of a continuing violation. Morgan, 536 U.S. at 113. As the Morgan Court stated:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory acts starts a new clock for filing chargers alleging that act.

Id.

The uncontested facts reveal that the decision to abolish Plaintiff's position in August of 1999 was a discrete act from the August 2003 job abolishment. See Def. L.R. 7.1 Stat. ¶ 22. No reasonable fact finder could conclude otherwise. The record does not support the theory that there existed a policy or practice which caused the alleged discrimination, or that the timely claim is continuous with the untimely claim. Accordingly, the 1999 claim must be dismissed as time barred.

Second, and assuming *arguendo* that the 1999 claim is timely, the claim fails on the merits. The uncontested facts reveal that, due to the terms of a Collective Bargaining Agreement ("CBA") covering the electrical craft positions at Amtrak's Albany/Rensselaer facility, Amtrak was required to implement business decisions related to electricians' positions by engaging in an intricate system of job abolishments followed by job re-biddings. See Def. L.R. 7.1 Stat. ¶¶ 4-28. Essentially, when Amtrak felt there was a legitimate business reason to alter or change the electricians' duties or hours, it would "abolish" a preexisting position and create a new position. Id. The electricians would then bid on the new position, and the position would be awarded based upon seniority. Id.

6

The procedure was monitored by the employees' union, and applied equally to all employees in the bargaining unit. See id.

The August 1999 job abolishment equally affected Plaintiff and a similarly situated white employee in that both employees' positions were abolished. Id. ¶ 11. Further, Plaintiff and this white employee were treated equally with regard to the positions that they could have bid into, and, based upon relative seniority, Plaintiff would have received the higher paying available positions if he had bid into them. Id. at ¶¶ 12-15. The uncontested facts lack any indication that the employer considered the race of any employee when it abolished Plaintiff's position in August 1999, or that he was treated less favorably than a similarly situated employee outside his protected classification. See Graham v. Long Island Rail Road, 230 F.3d 34, 39 (2d Cir. 2000)("A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group."). Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999)(citation omitted); see id. at 448.[3] Accordingly, Plaintiff fails to establish even the minimal showing necessary to state a *prima case* of discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)(The burden of proof that a plaintiff must meet at the *prima facie* stage in order to survive summary judgment is minimal.); Stern v. Trustees

---

[3] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

7

of Columbia University, 131 F.3d 305, 311-12 (2d Cir. 1997)(To establish a *prima facie* case of intentional discrimination, Plaintiff must establish, *inter alia*, that the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination.); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995)(A plaintiff must proffer some admissible evidence of each of the elements of a *prima facie* case, including evidence from which a reasonable trier of fact could infer discriminatory motive.).

Further, and assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination with regard to the 1999 job action, he fails to rebut the employer's demonstration that it acted for legitimate business reasons when it abolished the two positions in August 1999. See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Patterson v. County of Oneida, New York, 375 F.3d 206, (2d Cir. 2004).[4] On the present record, all Plaintiff has offered is

---

[4] As the Second Circuit explained in Patterson:

Once the plaintiff satisfies his initial, "minimal," burden, see, e.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)("Hicks"); Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001), "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the' " termination, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)(quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817), supported by admissible evidence "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action," Hicks, 509 U.S. at 507, 113 S.Ct. 2742 (emphasis omitted). If the employer carries this burden, the burden shifts back to the plaintiff to demonstrate by competent evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Windham v. Time Warner, Inc., 275 F.3d at 187. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," Burdine, 450 U.S. at 253, 101 S.Ct. 1089, and if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate, see, e.g., Smith v. American Express Co., 853 F.2d 151, 154-55 (2d Cir. 1988)(affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext).

375 F.3d at 221.

his subjective belief that the abolishment of this positions was motivated by discriminatory considerations. However, as stated above, an employee's personal belief alone cannot establish discriminatory motive. See Bickerstaff, 196 F.3d at 446; Richardson v. New York State Dep't, of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999)(affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual). Given the absence of evidence indicating that the employer's stated reason for the job action in August 1999 was a pretext for discrimination, or that considerations of Plaintiff's race motivated the action, Plaintiff's claim cannot survive summary judgment. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d Cir. 2000)(minority plaintiff failed to show triable issue on presence of pretext where she did not show that similarly-situated non-minorities were treated differently or that similarly-situated minorities were treated the same). Accordingly, the claim arising from the August 1999 job abolishment is dismissed.

### 2. August 2003 Job Abolishment

The same analysis applies to the August 2003 job abolishment. The uncontested facts lack any indication that considerations of race played a part in Amtrak's decision to abolish Plaintiff's position in August 2003. Rather, the facts indicate that in August 2003, Amtrak instituted a workforce restructuring because one-third of the locomotives maintained by the Albany/Rensselaer facility were removed from service that year. Def. L.R. 7.1 Stat. ¶ 22. In addition to Plaintiff's position, the positions of six white employees were also abolished. Id. Following this workforce restructuring, Plaintiff, like the other employees in the bargaining unit, rebid on and was awarded various jobs in accordance with the seniority provisions of the CBA. Id. at ¶¶ 23-28. As with the August 1999 job abolishment, Plaintiff's claim of discrimination stemming from the August 2003

job abolishment fails to establish a *prima facie* case of discrimination and, if a *prima facie* case is made out, fails to rebut the employer's legitimate non-discriminatory reason for the employment decision. Accordingly, the claim based upon the August 2003 job abolishment is dismissed.

### B. Retaliation Claim

Plaintiff also asserts that, after he complained to the EEOC in December 2003, Amtrak retaliated against him by creating a hostile work environment. See Compl. ¶ 8(c). "Retaliation claims are governed by the burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)." Walker v. New York City Transit Auth., 2001 WL 1098022, at * 7 (S.D.N.Y. Sept. 19, 2001). To establish a *prima facie* case of retaliation in violation of Title VII (42 U.S.C. § 2000e-3(a)), Plaintiff must show "[1] that [he] was engaged in a protected activity; [2] that the employer was aware of that activity; [3] that [he] suffered adverse employment decisions; and [4] that there was a causal connection between the protected activity and the adverse employment action." Collins v. New York Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002)(internal quotation marks and citations omitted); see Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d. Cir. 2000).

The creation of a hostile work environment can constitute an adverse employment action for purposes of the *prima facie* case on a retaliation claim, see Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir. 2004)(*per curiam*); Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002), and the fact that Plaintiff is currently employed with Defendant does not prevent him from asserting that he was subjected to a hostile work environment. Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). However, in order to establish that he was subjected to a legally actionable hostile work environment, Plaintiff must show that his workplace was "permeated with discriminatory

10

intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000); see Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004)(In order to show a hostile work environment based upon harassment, "a plaintiff must first show that 'the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ....'" )(quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)).

To determine whether an environment is sufficiently hostile or abusive, courts examine the totality of the circumstances including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) what psychological harm, if any, resulted. Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 437 (2d Cir. 1999). "[T]he plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)(internal quotation marks and citations omitted). The workplace must be both objectively and subjectively hostile. Id.

Plaintiff's evidence of a hostile work environment falls well short of this standard. In his affidavit, Plaintiff asserts:

> 75. In 2004, after I filed a claim of discrimination with the EEOC against Defendant, a supervisor falsely accused me of neglect of duty, and placed me in a life threatening situation, and my positions has been abolished.
>
> 76. When my position was abolished in 2004, I was forced to take an undesirable Vacation Relief position.

11

>	77.  All of the above incidences created a hostile and dangerous workplace for me.  Union representative Mr. Peter Schmidt verified the false accusation incident in a letter for the plaintiff.

Fox Aff. ¶¶ 75-77.

The present record does not support a finding that these allegations, either singularly or in concert, arose to the level of objective hostility necessary to constitute an actionable hostile work environment. The allegation of being falsely accused of neglect of duties and, seemingly, of being "placed" in a "life threatening situation," is supported by a document that could loosely be described as an affidavit from Plaintiff's union representative, Peter Schmidt. See dkt. # 35-6 (Plf. ex. #30). This affidavit appears to indicate that on January 28, 2004, Plaintiff had a meeting with his General Foreman during which Plaintiff was accused of "allowing illegal paper to leave [the] facility," and of not properly inspecting a piece of locomotive equipment as he had been ordered to do on a previous date. Id.  Plaintiff protested the first "accusation" because he had not been the person who signed "the paper" before it left the facility, and protested the second "accusation" because he felt the weather conditions on the date the order was given made the inspection unsafe.

The most the Court can reasonably infer from these facts is that Plaintiff was verbally reprimanded on one occasion for two workplace incidents; that his union representative was present during the reprimand; and Plaintiff had what he felt was a justification for his actions, or inactions, regarding the allegations. There is no indication that he suffered any further ramifications from the reprimand, or that he was thereafter required to inspect locomotive equipment in conditions he felt made such assignments dangerous.  A single verbal reprimand does not rise to the level of objective egregiousness necessary to make out a hostile environment. See Singh v. N.Y.C. Off-Track Betting Corp., 2005 WL 1354038, at * 12 (S.D.N.Y. June 8, 2005).  If it did, employers would be

hamstrung in their attempts to control and monitor their employees. [5]

The contention that the employer placed Plaintiff in a "life threatening situation" amounts to nothing more than a broad conclusory allegation unsupported by the record. Plaintiff's facts indicate that he refused the order to inspect the specific piece of equipment when ordered to do so, and there is no indication that required to work in a dangerous situation after the January 28, 2004 meeting. Hence, while a single, extraordinarily severe incident can form the basis of a hostile work environment, Cruz, 202 F.3d at 570, Plaintiff's conclusory allegation that his life was placed in jeopardy is insufficient to withstand summary judgment in this case. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)("Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial."); Bickerstaff, 196 F.3d at 452 ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)(The "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to defeat a properly supported motion for summary judgment.).

The 2004 job abolishment serves Plaintiff no better on this motion. The undisputed facts indicate that in February of 2004, the employer abolished several positions after consulting with the union, including the Plaintiff's position and the positions of six other employees (four of whom

---

[5] The reprimand does not serve as an independent "adverse employment action" for purposes of the *prima facie* case. See Weeks v. New York, 273, F.3d 76, 86 (2d Cir. 2001)(A "notice of discipline' did not create materially adverse change in plaintiff's working conditions and therefore was not an adverse employment action); Singh, 2005 WL 1354038, at * 8 (Written reprimand that did not result in suspension or any loss of wages, title, benefits, or responsibilities, or any other material change in the plaintiff's working conditions, was not an adverse employment action).

13

were white males), and that the action was taken due to legitimate business considerations. Def. L.R. 7.1 Stat. ¶¶ 24-28. Plaintiff rebid into his same position with the same pay, albeit with slightly different responsibilities and work hours necessary to meet the employer's business needs. Id. at ¶ 28. As indicated above, the job abolishment and rebidding process was a way of life at the workplace.  The fact that Plaintiff and several other employees were subjected to it does not, in and of itself, rise to the level of objective hostility necessary to make out a hostile work environment claim. See e.g.  Singh, 2005 WL 1354038, at * 8 ("[T]he change in the plaintiff's schedule from a 'two days on, two days off' schedule to a five consecutive work day schedule did not constitute an adverse employment action because it had no material impact upon the conditions of the plaintiff's employment.")(citing Rivera v. Potter, 2005 WL 236490, at *5 n. 5 (S.D.N.Y.  Jan. 31, 2005) (finding unwanted schedule change did not constitute adverse employment action)).[6]

Further, the 2004 job abolishment, even when combined with the verbal reprimand and the order to inspect the piece of locomotive equipment in poor weather, does not rise to the level of objective hostility necessary to support a finding that the conditions of Plaintiff's employment were sufficiently severe or pervasive to create an abusive working environment. Incidents that are relatively minor or infrequent do not meet the standard for a hostile work environment.  Deters, 368 F.3d at 189.  Like the District Court concluded in Singh, this Court concludes that  "[g]iven the limited number of incidents and their lack of severity, no reasonable trier of fact could conclude that

---

[6] Even if the August 2004 job changed constituted an independent "adverse employment action" for purposes of the *prima facie* case, the retaliation claim based upon this job action would fail because the uncontested facts indicate that the employer had a legitimate reason for the 2004 job abolishments. See Walker, 2001 WL 1098022, at * 8. ("[I]f the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action."  If the employer proffers a legitimate reason, the burden then shifts back to the plaintiff to prove the ultimate issue: whether "retaliation played a motivating role in, or contributed to, the employer's decision.") (internal quotation and citations omitted).

14

these incidents created 'an abusive working environment.'" Singh, 2005 WL 1354038, at * 12 (S.D.N.Y. June 8, 2005)(citing, inter alia, Garvin v. Potter, 2005 WL 957402, at *16 (S.D.N.Y. Apr. 25, 2005)(finding that "a handful of situations" in which plaintiff was reprimanded "did not constitute harassment sufficiently severe or pervasive to alter the conditions of the victim's employment, nor [did] it constitute an abusive working environment as required to create a *prima facie* case for a hostile working environment.")(internal quotation marks omitted)). Therefore, the retaliation claim must be dismissed.

## V. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**, and the action is **DISMISSED**.

**IT IS SO ORDERED**

DATED: February 16, 2006

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge